Ryan D. Ball, Bar No. 321772
rball@jonesday.com
Matthew T. Billeci, Bar No. 329014
mbilleci@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California  92612.4408
Telephone:  +1.949.851.3939
Facsimile:   +1.949.553.7539

Jeffrey Baltruzak, *pro hac vice*
jbaltruzak@jonesday.com
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219-2514
Telephone:  +1.412.391.3939
Facsimile:   +1.412.394.7959

Attorneys for Defendant CAMUTO IPCO,
LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL SCOTT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAMUTO IPCO, LLC d/b/a VINCE CAMUTO,<br><br>Defendant. | Case No. 2:25-cv-03446-AB (Ex)<br><br>**DEFENDANT CAMUTO IPCO, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:    September 19, 2025<br>Time:    10:00 a.m.<br>Crtrm:   7B |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

    I.    Plaintiff's Purchase And The "Route Insurance Fee" .......................... 3

    II.    Plaintiff's Theories Of Deception And Claims.................................... 6

STANDARD............................................................................................................ 7

ARGUMENT ........................................................................................................... 8

    I.    Plaintiff's Statutory UCL, FAL, And CLRA Claims Fail ................... 8

        A.    The Route Insurance Fee Was Not Deceptive............................. 8

        B.    Plaintiff, Not Camuto, Bears The Risk Of Loss During Shipment ...................................................................................... 13

        C.    Plaintiff Cannot Plausibly Allege Reliance .............................. 16

    II.    Plaintiff's Unjust Enrichment Claim Fails......................................... 16

    III.    This Case Should Be Dismissed With Prejudice ............................... 18

CONCLUSION...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................7

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .................................................................................7

*Balzer v. Wal-Mart Stores, Inc.*,
2015 WL 13828418 (C.D. Cal. Feb. 25, 2015) .............................................17-18

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020).................................................................17

*Cemetery Bd. v. Telophase Soc'y of Am.*,
87 Cal.App.3d 847 (1978)...................................................................................12

*Chang v. US Glob. Sys.*,
2025 WL 735484 (C.D. Cal. Feb. 21, 2025).................................................16-17

*Charbonnet v. Omni Hotels & Resorts*,
2020 WL 7385828 (S.D. Cal. Dec. 16, 2020)..............................................*passim*

*Clark v. Perfect Bar, LLC*,
816 F.App'x 141 (9th Cir. 2020).........................................................................16

*Coffee v. Google, LLC*,
2021 WL 493387 (N.D. Cal. Feb. 10, 2021).......................................................16

*Decker v. GlenFed, Inc.*,
42 F.3d 1541 (9th Cir. 1994) .................................................................................8

*Ebner v. Fresh Inc.*,
838 F.3d 958 (9th Cir. 2016) .............................................................................1, 8

CAMUTO'S MEMO IN SUPPORT OF
MOTION TO DISMISS AM. COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

*Ford v. Hotwire, Inc.*,
   2007 WL 6235779 (S.D. Cal. Nov. 19, 2007) ....................................................... 9

*Gaynor v. W. Recreational Vehicles, Inc.*,
   473 F.Supp.2d 1060 (C.D. Cal. 2007) ................................................................. 15

*Harris v. Las Vegas Sands L.L.C.*,
   2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) .................................................. 8, 9

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
   707 F.3d 1114 (9th Cir. 2013) ............................................................................. 18

*Harvey v. World Mkt., LLC*,
   2025 WL 1359066 (N.D. Cal. May 9, 2025) ....................................................... 12

*In re Amazon Service Fee Litig.*,
   2024 WL 3460939 (W.D. Wash. Jul. 18, 2024) ............................................*passim*

*In re Arris Cable Modem Consumer Litig.*,
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................................ 8

*In re Plum Baby Food Litig.*,
   2024 WL 1354447 (N.D. Cal. Mar. 28, 2024), *aff'd*, No. 24-2766,
   2025 WL 1200700 (9th Cir. Apr. 25, 2025) ........................................................ 17

*Kerkorian v. Samsung Elecs. Am., Inc.*,
   2019 WL 6918293 (E.D. Cal. Dec. 19, 2019) ...................................................... 17

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................................. 8

*Lundbom v. Schwan's Home Serv., Inc.*,
   2020 WL 2736419 (D. Or. May 26, 2020) ........................................................... 13

*Navarro v. SmileDirectClub, Inc.*,
   2022 WL 1786582 (N.D. Cal. June 1, 2022) ....................................................... 12

*Pappy's Barber Shops, Inc. v. Farmer's Grp., Inc.*,
   491 F. Supp. 3d 738 (S.D. Cal. 2020) ................................................................. 18

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

*Peviani v. Natural Balance, Inc.*,
   774 F. Supp. 2d 1066 (S.D. Cal. 2011) ................................................................ 8

*Satco, Inc. v. State Bd. of Equalization*,
   144 Cal.App.3d 12 (1983) ..................................................................................... 15

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
   97 Cal.App.5th 192 (2023) ................................................................................ 17-18

*Shin v. Sanyo Foods Corp. of Am.*,
   2024 WL 4467603 (C.D. Cal. Aug. 13, 2024) ...................................................... 17

*Smith v. Allmax Nutrition, Inc.*,
   2015 WL 9434768 (E.D. Cal. Dec. 24, 2015) ...................................................... 17

*Snow v. Nectar Brand, LLC*,
   2023 WL 2558544, at *2 (C.D. Cal. Mar. 2, 2023) ............................................. 13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................ 8

*Wayne v. Staples, Inc.*,
   135 Cal.App.4th 466 (2006) .................................................................................... 9

*Wilson v. Brawn of California, Inc.*
   132 Cal.App.4th 549 (2005) ..........................................................................2, 14, 15

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

## **INTRODUCTION**

This case arises out of an optional $2.75 shipping insurance fee that Defendant Vince Camuto ("Camuto") disclosed to Plaintiff Rachel Scott ("Plaintiff") in her online shopping cart when she purchased a pair of boots from Camuto's website in December 2024.  After Camuto moved to dismiss Plaintiff's first complaint in June 2025, Plaintiff amended her complaint with a handful of new allegations to claim that the fee was unfair and deceptive. But Plaintiff's new allegations do nothing to save her claims, as Plaintiff cannot escape the fact that Camuto's checkout page clearly and conspicuously disclosed the **optional** shipping insurance fee (the "Route Insurance Fee") **before** Plaintiff completed her purchase from Camuto's website in December 2024. Both of Plaintiff's complaints concede these facts, which are dispositive. As such, this case should be dismissed with prejudice.

As Plaintiff's own screenshots make clear, Camuto discloses the optional Route Insurance Fee in two places on the checkout page: (1) next to the shipping method; and (2) in the customer's cart, along with the other items to be purchased. As a matter of law, any "reasonable customer" would look at their cart, know what they are buying, and see the Route Insurance Fee, including in the final price. *Ebner v. Fresh Inc.*, 838 F.3d 958, 967 (9th Cir. 2016). For this reason, courts routinely dismiss claims where, as here, the face of the Complaint shows that the fee at issue was plainly disclosed. *See*, *e.g.*, *In re Amazon Service Fee Litig.*, 2024 WL 3460939 (W.D. Wash. Jul. 18, 2024) ("*Amazon*"); *Charbonnet v. Omni Hotels & Resorts*, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ("*Charbonnet*").

Plaintiff's deceptive practices theory also clashes with the intention of the California Legislature over pricing transparency and deceptive price advertising. In passing the California Fair Pricing Law ("CFPL"), Cal. Civ. Code 1770(a)(29), the Legislature made clear that the statute applies only to mandatory non-shipping fees; it does not apply to **shipping** charges or **optional** services. In other words, the Legislature specifically carved out the Route Insurance Fee—an optional service to

insure during shipping—from constituting a deceptive pricing practice. As such, the Route Insurance Fee (and those like it) cannot serve as the basis for a deceptive practices lawsuit. Plaintiff's attempt to override the intent of the Legislature and impermissibly expand the scope of the CFPL should be rejected.

Unable to plausibly allege a deceptive practice, Plaintiff resorts to claiming that the voluntary Route Insurance Fee is unlawful because it "does not provide any 'protection' benefits." That is wrong twice over. Plaintiff ignores that the Route Insurance Fee also provides a post-delivery benefit in the event a good is immediately stolen after delivery (*i.e.,* by "porch pirates").  Further, Plaintiff, not Camuto, is responsible for the risk of loss until her order is delivered. In California, the presumptive form of contract between a buyer and a seller is a shipping contract. *See Wilson v. Brawn of California, Inc.*, 132 Cal.App.4th 549, 556 (2005). Under such contracts, the risk of loss passes to the customer when the carrier takes receipt of the shipment, not when the shipment is delivered to the customer. *Id.* at 555–57. Plaintiff thus assumed the risk of loss after "Route, the carrier," allegedly took possession of her shipment. Accordingly, Plaintiff received the benefit of shipping insurance when she knowingly opted to keep the Route Insurance Fee in her cart before completing her purchase. Nothing was improper about this.

Plaintiff's tag-along unjust enrichment claim is even less meritorious. To begin, California law does not recognize a separate of action for unjust enrichment. And, even if the Court construed the claim as one for quasi-contract, it would still fail because the parties entered into a express contract for the sale of goods.  Indeed, Plaintiff affirmatively alleges that the parties entered into an agreement in her amended complaint. This claim is therefore dead on arrival.

Put simply, Camuto clearly and conspicuously disclosed the optional shipping insurance provided by Route. Although she could have easily chose to either remove the insurance from her cart or simply not complete her purchase, Plaintiff did neither. Instead, she ignored repeated disclosures before completing her purchase and then

CAMUTO'S MEMO I/S/O MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

initiated this lawsuit, claiming that she was deceived. Plaintiff's allegations not only strain credulity, they fail as a matter of law. No reasonable consumer would be deceived by Camuto's practices. Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice.

**BACKGROUND**[1]

### I. Plaintiff's Purchase And The "Route Insurance Fee"

Camuto maintains a website, www.vincecamuto.com, which sells, among other things, women and men's footwear. Am. Compl., ¶ 26. Plaintiff, a California resident, alleges that she ordered a pair of boots from Camuto's website in December 2024. *Id.*, ¶ 67. According to Plaintiff, her order "included a surreptitious 'Route Package Protection' Fee amounting to $2.75" (*i.e.*, the Route Insurance Fee). *Id.*, ¶ 69. According to Plaintiff, Route is "an ecommerce service provider" and "carrier," which provides "shipping insurance" that does two things. *Id.*, ¶ 30. First, it "shifts the risk of loss to Route, the carrier, rather than that remaining with the merchant;" and second, it "provid[es] customer support for shipping related issues." *Id*.

The Complaint includes screenshots that show the "multi-step purchasing process"—which in reality is only two "steps"—that Plaintiff completed to buy the boots off the website (and where the Route Insurance Fee is applied). *Id.*, ¶¶ 22-23. During the first step, customers, like Plaintiff, chose an item to buy and are presented the following screen (reproduced from both complaints):

---

[1] The following factual background is taken from the allegations in the Amended Complaint ("Am. Compl.") (ECF No. 14) and documents incorporated by reference, of which the Court can take judicial notice in deciding this motion to dismiss. Filed herewith is Camuto's Request for Judicial Notice ("RJN"). References to "Compl." are to Plaintiff's first Complaint (ECF No. 1).

CAMUTO'S MEMO I/S/O MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)



*Id.*, ¶ 22; RJN Ex. 1 (red circle added); Compl., ¶ 19. As shown, the item is placed into the customer's cart, and the bottom of the webpage includes a "Checkout" button that reflects the  price of the item. Immediately above the button is text stating: "[S]hipping & taxes calculated at checkout." Am. Compl., ¶ 22; RJN Ex. 1.

The second (and final) step is the single checkout page, also shown in the Amended Complaint:



Am. Compl., ¶ 23, RJN Ex. 2 (red circles added); Compl., ¶ 20. As shown, the

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

checkout page discloses the Route Insurance Fee *twice*.

*First*, the left side of the page discloses the shipping information. Immediately below the shipping method, Camuto discloses the optional shipping insurance with a checkbox that is accompanied by text stating "Shipping Protection . . . Route." Am. Compl., ¶ 23, RJN Ex. 2. If the customer wants to know more, directly next to the disclosure is an "information" icon, which explains that Route provides "coverage for online purchases that are lost or damaged in transit, or stolen immediately after the carrier's proof of delivery where Route traces the transportation." RJN Ex. 3.

*Second*, the Route Insurance Fee is disclosed in the consumer's virtual cart, alongside the items the consumer intends to buy. Am. Compl., ¶ 23. There is also a "?" next to "Shipping" that gives the following information:

> We are not responsible for lost, stolen, or damaged shipments. Please ensure that you have selected <u>Route Insurance</u> at checkout for package protection.

RJN Ex. 4. As these disclosures make clear, Camuto repeatedly informed Plaintiff of the optional Route Insurance Fee throughout the checkout process, including in the shipping section and in the cart right next to the list of items that Plaintiff intended to buy before she completed her purchase. And in her Amended Complaint, Plaintiff confesses that some consumers "notice" the fee, "but decide to go through with the purchase anyway." Am. Compl., ¶ 48.

In both of her Complaints, Plaintiff concedes two key facts:

*First*, Plaintiff admits, as she must, that the Route Insurance Fee is disclosed on the payment screen and *before completing a purchase*. Am. Compl., ¶ 5 (fee is disclosed prior to purchase); *id.*, ¶ 47 (Route Insurance Fee can be removed "if a consumer unselects the prechecked box"); *id.*, ¶ 50; *id.*, ¶ 56 (admitting that the Route Insurance Fee "shows up as a line item in [the customers'] shopping cart—after the purchase process is *largely* complete.") (emphasis added); *see also* Compl., ¶¶ 5, 40, 42, 48 (alleging same facts).

*Second*, Plaintiff also concedes that the Route Insurance Fee is *optional*, not

CAMUTO'S MEMO I/S/O MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

mandatory. Am. Compl., ¶ 23; *see also id.*, ¶ 47 (Route Insurance Fee can be removed "if a consumer unselects the prechecked box"); *see also* Compl., ¶¶ 20, 40 (alleging same facts). Nevertheless, Plaintiff attempts to confuse the issue with numerous stray and conclusory allegations to suggest otherwise. For instance, Plaintiff speculates that customers "believe that they have no choice but to pay these fees," and that they are "disincentivized" to try to figure out "whether there is a way to avoid these fees." Am. Compl., ¶ 57; Compl., ¶ 49. Of course, that is far different than actually alleging that the customer must pay the fee, which Plaintiff does not (and cannot) do.

## II. Plaintiff's Theories Of Deception And Claims

On these allegations, Plaintiff asserts that the Route Insurance Fee is "deceptive and unfair" (Am. Compl., ¶ 5) in two ways: (1) the Route Insurance Fee is "secretly" added to "consumers' carts without their permission and [Camuto] does not disclose this added Fee until the very last step in the multi-step purchasing process;" and (2) the Route Insurance Fee is "deceptively named and described" because it "does not provide any additional value to the consumer, as their packages are already 'insured' in that Defendant, as a merchant-seller, bears the risk of loss or damage to the goods until they are duly delivered to the consumer." *Id.*, ¶¶ 3, 5, 42; *see also id.*, ¶ 1 (Route Insurance Fee is "surreptitiously tack[ed] on"); *id.*, ¶ 14 (Route Insurance Fee is "unfairly obscure[d]"). According to Plaintiff, the Route Insurance Fee "purports to provide shipping insurance" for the customer's order (*id.*, ¶ 27), but is improper because "by default, the merchant seller bears the risk of loss until the goods are received by the buyer." *Id.*, ¶ 33. Thus, Plaintiff alleges that the Route Insurance Fee is "deceptive" because it "trick[s]" customers "into paying for services already provided." *Id.*, ¶ 9.

Plaintiff asserts four causes of action to advance her theories. She brings three statutory claims under: (1) the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ("UCL"), (2) the California False Advertising Law (Cal. Bus. & Prof. Code § 17500) ("FAL"), and the California Consumer Legal Remedies Act (Cal. Civ.

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

Code § 1750) ("CLRA"). She brings a fourth claim for unjust enrichment. Plaintiff seeks to represent a nationwide class of Camuto customers who paid the Route Insurance Fee, as well as a subclass of California customers. *Id.*, ¶ 73.

### STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *See*, *e.g.*, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In resolving a motion under Rule 12(b)(6), a court must follow a two-step approach. *Id.* at 678–79. First, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Furthermore, a court must not "accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (*quoting Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. This determination is context-specific, requiring a court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* When ruling on a motion to dismiss, the Court may consider the facts alleged in the Complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and

matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Rule "9(b)'s heightened pleading standards apply to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud." *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) (citations omitted); *see also In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) ("When UCL, CLRA, and FAL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations[.]'"). To meet this standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting source omitted). Ultimately, "[t]o allege fraud with particularity, a plaintiff must" explain "why the statement or omission complained of was false or misleading." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

## ARGUMENT

### I.    Plaintiff's Statutory UCL, FAL, And CLRA Claims Fail

Plaintiff's unfair and deceptive practices claims cannot withstand scrutiny. Plaintiff's own allegations show that Camuto clearly, conspicuously, and repeatedly disclosed the optional Route Insurance Fee prior to Plaintiff completing her purchase. Because no reasonable consumer would be misled by these practices, Plaintiff's UCL, FAL, and CLRA claims fail as a matter of law.

#### A.    The Route Insurance Fee Was Not Deceptive

"Claims under CLRA, FAL, and UCL are governed by the 'reasonable consumer' test, under which a plaintiff must show that 'members of the public are likely to be deceived.'" *See, e.g.*, *Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at *5 (C.D. Cal. Aug. 16, 2013) (quoting source omitted); *Ebner*, 838 F.3d at 967 (same). Plaintiff makes no such showing.

Plaintiff alleges that the Route Insurance Fee is deceptive and unfair because

it was "surreptitiously tack[ed] on" during the purchase process, Am. Compl., ¶ 1, and "many consumers *may not* realize that they are being charged for this unwanted product or service." *Id.*, ¶ 41 (emphasis added); *see also id.*, ¶¶ 8, 16, 27, 51, 116. These speculative allegations, however, establish nothing "more than a *mere possibility*" that "some *few consumers*" may have been misled. *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003)) (emphasis added). Nothing in Plaintiff's Amended Complaint establishes, as it must, "a *probability* that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (cleaned up and emphasis added). To the contrary, Plaintiff's allegations make clear that no reasonable consumer would be deceived by the inclusion of the optional Route Insurance Fee, which Camuto clearly, conspicuously, and repeatedly disclosed during Plaintiff's checkout process and prior to the completion of her order.  Indeed, Plaintiff now concedes in her latest complaint that consumers "notice" the Route Insurance Fee. Am. Compl., ¶ 48.

Courts routinely dismiss deceptive practices claims under these circumstances. *See, e.g.*, *Harris*, 2013 WL 5291142, at *5 (finding that the resort's website was not deceptive because it "explicitly disclosed the existence and amount of the resort fee," and the fee was repeatedly disclosed to consumers and not "tucked away inconspicuously"); *Ford v. Hotwire, Inc.*, 2007 WL 6235779, at *4 (S.D. Cal. Nov. 19, 2007) (finding that no reasonable consumer was likely to be deceived where defendant disclosed that "its quoted rate does not include certain charges" and the amount and nature of the fee at issue "is readily available public information disclosed on the hotel's own website"); *Wayne v. Staples, Inc.*, 135 Cal.App.4th 466, 483–84 (2006) (finding that shipping order form was not misleading because (1) it clearly disclosed the actual cost charged by Staples for the insurance coverage at the time of purchase, (2) the full price was disclosed before the customer paid, and (3) the customer could decline to accept the insurance coverage or decline to ship the

package with Staples).

*Amazon* is instructive. There, the plaintiff alleged that Amazon had engaged in deceptive conduct by including a delivery service fee for groceries ordered from Whole Foods. *See Amazon*, 2024 WL 3460939, at *1-2. According to the plaintiff, Amazon's conduct was deceptive "because the 'initial webpage [did] not disclose the existence of the service fee" and Amazon "switche[d] the price by tacking on the service fee only later in the ordering process." *Id.* at *8. The court disagreed, finding that Amazon did not "engage[] in a bait-and-switch or in drip pricing where products are listed at their true price and the final cost of an order is solely dependent on a customer's decision to choose an optional delivery service for those products." *Id*. As the court observed, "a reasonable consumer would" notice the fee because it was "disclosed on at least two separate webpages in the checkout process, including the final order page where the fee is again disclosed." *Id.* As such, the court dismissed the deceptive pricing claim "without leave to amend." *Id.*, at *9.

The court in *Charbonnet* reached a similar conclusion. There, the plaintiff alleged that the defendant's (*i.e.*, Omni's) Expedia page was deceptive because it added a mandatory—not optional—$25 "property fee" on the final checkout page, meaning it was "not revealed until after the [allegedly] false price was first represented." 2020 WL 7385828, at *1, *3. The court rejected the plaintiff's theory on two grounds. *First*, the court found that Omni "put a reasonable consumer on notice that they would be charged some taxes and fees in addition to the daily rate for the total price" of the hotel by "explicitly disclos[ing] that the daily rate advertised does not equal the total cost of the room." *Id.* at *3. *Second*, the court found that "a reasonable consumer booking a room" could "click on the prominently displayed 'Price details' drop-down menu to see a breakdown of what taxes and fees will be added to the daily rate." *Id.*, at *4. On these facts, the Court held that no "reasonable consumer would be deceived into thinking the total cost of their room did not include the property fee," as any such consumer would have to "ignore both the total price

- 10 -

and the 'Price details' link, click 'Reserve' directly below them and pay for a room at the higher price including the stated taxes and fees without recognizing the difference." *Id.*

As in *Amazon* and *Charbonnet*, no reasonable consumer would be deceived by the Route Insurance Fee. Indeed, like Amazon and Omni, Camuto prominently and repeatedly disclosed the *optional* Route Insurance Fee throughout the checkout process and before Plaintiff finalized her purchase. When Plaintiff first placed her order in her cart, Camuto, like Omni, included a disclosure immediately above the "Checkout" button that "shipping & taxes [are] calculated at checkout," thus making clear that the item price did not reflect the total price. *Compare* Am. Compl. ¶ 22; RJN Ex. 1, *with* RJN Ex. 6. And, after Plaintiff proceeded to the checkout page, Camuto, like Amazon and Omni, conspicuously disclosed the optional Route Insurance Fee in Plaintiff's cart, as well as in a checkbox immediately below the shipping instructions Plaintiff had to complete before finalizing her purchase. *Compare* Am. Compl. ¶ 23; RJN Ex. 2, *with* RJN Exs. 5, 7. In fact, Camuto's disclosures are even more prominent than those in *Amazon* and *Charbonnet*. *Id.* Unlike in *Amazon*, Camuto presented the Route Insurance Fee in large font at the top of the checkout page in the same way as all other items in Plaintiff's cart. *See Amazon*, 2024 WL 3460939, at *8. And, unlike in *Charbonnet*, Camuto did not require Plaintiff to click a drop-down button to view the fee; to the contrary, it "informed [Plaintiff] of what the [Route Insurance Fee] covers." *Charbonnet*, 2020 WL 7385828, at *4. These practices cannot be deemed deceptive or unfair.

This conclusion is further underscored by the recent passage of the CFPL, Cal. Civ. Code § 1770(29)(A), which amended the CLRA to define "drip pricing"—*i.e.*, "advertising a price that is less than the actual price that a consumer will have to pay for a good or service"—as an unfair and deceptive practice. RJN Ex. 8 at 19. Although Plaintiff claims that the Route Insurance Fee violates the CFPL, *see* Compl., ¶¶ 63, 127, there can be no dispute that the statute does ***not apply*** to ***optional***

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

or ***shipping fees***, like the Route Insurance Fee. *See* RJN Ex. 8 at 19, 20. Instead, the CFPL "prohibits advertising, displaying, or offering a price for a good or service that does not include all ***mandatory*** fees or charges other than taxes or actually incurred shipping costs." *Harvey v. World Mkt., LLC*, 2025 WL 1359066, at *1 (N.D. Cal. May 9, 2025) (cleaned up and emphasis added). The Legislature has therefore made clear that the Route Insurance Fee (and those like it) are not deceptive or unfair. The Court should reject Plaintiff's invitation to override the Legislature's intent by impermissibly expanding the scope of the CFPL through litigation. *See Cemetery Bd. v. Telophase Soc'y of Am.*, 87 Cal.App.3d 847, 858 (1978) ("[I]t is not the proper function of the courts to supply legislative omissions from a statute in an attempt to make it conform to a presumed intention of the [California] Legislature not expressed in the statutory language."); *see also* SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012) (discussing the omitted-case canon, which provides that "[n]othing is to be added to what the text states or reasonably implies").

Unable to dispute that the Route Insurance Fee is optional and disclosed multiple times to consumers prior to check out, Plaintiff claims that she was still deceived because the Route Fee was presented in a pre-checked box. Am. Compl., ¶¶ 43-46. A reasonable customer knows what a checkbox is (and what a check means). Indeed, because Plaintiff could uncheck the box to remove the Route Insurance Fee, this case even stronger than *Amazon* and *Charbonnet* where the consumers could not remove the fee by simply unselecting the box. *See* RJN Exs. 5, 7. Further, the disclosure of an agreement in a pre-checked box has regularly been found sufficient to create a contract or to give consent, which require stronger showings than what is needed here (only sufficient disclosure to a reasonable consumer). *Navarro v. SmileDirectClub, Inc.*, 2022 WL 1786582, at *4 (N.D. Cal. June 1, 2022) ("Courts in [the Northern District of California] have upheld similar agreements that require a computer user to consent to terms and conditions before

- 12 -

proceeding with an internet transaction, even where the user is not required to check a separate dialog box to indicate assent." (collecting cases)); *Snow v. Nectar Brand, LLC*, 2023 WL 2558544, at *2 (C.D. Cal. Mar. 2, 2023) (reaching same conclusion); *Lundbom v. Schwan's Home Serv., Inc.*, 2020 WL 2736419, at *9 (D. Or. May 26, 2020) (holding that a consumer consented to phone communications when registering for an account even though the disclosure was pre-checked).

In short, because Camuto conspicuously disclosed the optional Route Insurance Fee throughout the checkout process, no reasonable consumer would have been deceived by the inclusion of the Fee in the final purchase price. To hold otherwise would require the Court to find it reasonable for Plaintiff "to ignore" numerous disclosures, including that shipping and taxes are calculated at checkout, the Route Insurance Fee checkbox below the shipping section on the checkout page, the Route Insurance Fee prominently listed in the shopping cart, and the higher total price that included the Route Insurance Fee, all "without recognizing the difference." *Charbonnet*, 2020 WL 7385828, at *4. If Plaintiff did, in fact, ignore these disclosures, she "would not be a reasonable" consumer. *Id.*

## B.    Plaintiff, Not Camuto, Bears The Risk Of Loss During Shipment

Unable to plausibly allege that a reasonable consumer would be deceived by the Route Insurance Fee, Plaintiff resorts to claiming that the fee is deceptive and unfair because it is not actually "shipping insurance" for the customer. Am. Compl., ¶ 5. According to Plaintiff, Camuto retains the risk of loss during shipping, and thus the Route Insurance Fee does "not afford[] any additional security or 'insurance' as to the successful and safe delivery of [a consumer's] purchase." *Id.*, ¶ 30. In other words, Plaintiff claims the Route Protection Fee does "does not provide any additional value to the consumer." *Id.*, ¶ 42. Plaintiff's theory assumes the truth of its own premise that Camuto—not Plaintiff—bears the risk of loss during transit. *See id.*, ¶¶ 25, 26, 30, 32. But Plaintiff's premise is wrong for two independent and sufficient reasons.

*First*, there is no question that the customer bears the risk of loss ***after delivery*** (*i.e.*, once the package is at her door).  The Route Insurance Fee provides insurance for theft after delivery, shifting that risk of loss to Route.  RJN Ex. 3 ("Route Shipping Protection extends coverage for online purchases . . . stolen immediately after the carrier's proof of delivery"). The Route Insurance Fee thus insures consumers against the "porch pirate" problem, where goods are delivered to a consumer and then stolen after delivery. *See, e.g.*, "California Has the Worst Porch Theft Problem in America," CBS News (Dec. 2, 2019).[2] Because the Route Insurance Fee undeniably confers a benefit to consumers post-delivery that they would not otherwise have, Camuto cannot plausibly have "tricked" consumers "into paying for services already provided."  Am. Compl. ¶ 9.

*Second*, Camuto does not bear the risk of loss during transit as a matter of law. "Commercial Code section 2509 sets forth the general rules for determining which party bears the risk of loss of goods in transit when there has been no breach of contract." *Wilson*, 132 Cal.App.4th at 554–55. According to Plaintiff, "the default rule is that a merchant seller cannot transfer risk of loss to the buyer until the buyer has actually received the merchandise." Am. Compl., ¶ 28 (citing UCC § 2-509(3), Cal. Com. Code § 2509(b)).[3] But the "default rule" Plaintiff cites is anything but—it is an exception that applies only if the first two subsections of the statute do not. *See* Cal. Com. Code § 2509(3) (applying "[i]n any case not within subdivision (1) or (2)"). Here, the true default rule—section 2509(1)—applies because the parties' contract "requires or authorizes" Camuto, as seller, "to ship the goods by carrier." Cal. Com. Code § 2509(1); *see also* Am. Compl., ¶ 30 (Route is "carrier" here, not

---

[2] Available at https://www.cbsnews.com/losangeles/news/california-porch-theft-la/; *see also* "'Porch pirates' stole $12 billion in goods in the last year alone. Here's what you can do," CBS News (Dec. 11, 2024) *available at* https://www.cbsnews.com/news/porch-pirates-package-theft-insurance/.
[3] Plaintiff cites Cal. Com. Code § 2509(b), but that provision does not exist. Given that Plaintiff also cites UCC § 2-509(3), Camuto assumes that Plaintiff is citing to the corresponding provision in the California code, *see* Cal. Com. Code § 2509(3).

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

Camuto); *id.* ¶ 26 (Camuto is an "online retailer," not a carrier). Accordingly, Plaintiff bore the risk of loss at the time Camuto allegedly tendered the goods to Route.

*Wilson* is on all fours. There, the court specifically addressed the "risk of loss in consumer sales contracts," recognizing that a "'shipment' contract is regarded as the normal one and the 'destination' contract [is] the variant type." *Wilson*, 132 Cal.App.4th at 555; *see also Gaynor v. W. Recreational Vehicles, Inc.*, 473 F.Supp.2d 1060, 1062 (C.D. Cal. 2007) (recognizing "[s]hipment contracts are the presumptive form in California" in the context of when title passes). Under a shipment contract, the seller bears the risk of loss only until he delivers the goods to the carrier, at which point the risk passes to the buyer. *See Wilson*, 132 Cal.App.4th at 555; *see also Satco, Inc. v. State Bd. of Equalization*, 144 Cal.App.3d 12, 17 n.8 (1983) ("In a shipment contract the risk of loss of the goods passes to the buyer when they are relinquished to the carrier"). In a destination contract, on the other hand, the seller bears the risk until the carrier delivers possession of the goods to the buyer. *See Wilson,* 132 Cal.App.4th at 555; *see also Satco*, 144 Cal.App.3d at 17 n.8 ("In a destination contract the risk of loss remains with the seller while they are in possession of the carrier.").

As the *Wilson* court explained, if the parties want a destination contract, they must say so expressly and unambiguously: "[t]he seller is not obligated to deliver at a named destination and bear the concurrent risk of loss until arrival, unless he has **specifically agreed** so to deliver or the commercial understanding of the terms used by the parties contemplates such a delivery." *Wilson*, 132 Cal.App.4th at 555 (emphasis added and quotation omitted). Importantly, however, "a contract is not a destination contract simply because the seller places an address label on the package, or directs the carrier to 'ship to' a particular destination." *Id.* Instead, "[t]he general rule is that a contract containing neither a F.O.B. term nor any other term explicitly allocating loss is a shipment contract." *Id.* at 556 n.4 (internal citation omitted).

CAMUTO'S MEMO I/S/O MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

Here, Plaintiff does not allege, in either complaint, that the parties ever "specifically agreed" to a destination contract or that Camuto specifically agreed to bear the risk of loss after handing off the goods to the carrier. Nor could she. Plaintiff's own allegations establish that: (1) the parties had a shipment contract; (2) Plaintiff bore the risk of loss during shipment under that contract; and (3) the Route Insurance Fee was not "deceptively named and described" because Plaintiff received a "benefit" in the form of "additional security" from the risk of loss of her purchased goods.  Again, nothing about this conduct is unfair or deceptive.

## C.   Plaintiff Cannot Plausibly Allege Reliance

Because a reasonable consumer could not have been deceived by the Route Insurance Fee, Plaintiff's statutory claims also fail because she cannot plausibly allege reliance, a requisite element of her claims. *See, e.g.*, *Clark v. Perfect Bar, LLC*, 816 F.App'x 141, 142–43 (9th Cir. 2020) (collecting cases explaining the reliance requirement for misrepresentation claims under the CLRA, FAL, and UCL). Indeed, because the "allegedly 'omitted' [Route Insurance Fee] was disclosed in the total price and she accepted it," Plaintiff cannot show "that she would have behaved any differently" or "that she paid more than she otherwise would have paid." *Charbonnet*, 2020 WL 7385828, at *5. This is yet another basis for dismissal.

## II.   Plaintiff's Unjust Enrichment Claim Fails

Plaintiff's unjust enrichment claim should be easily disposed of for three independent reasons.[4]

*First*, "[t]he Ninth Circuit has determined that 'in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Chang v. US Glob. Sys.*, 2025 WL 735484 (C.D. Cal. Feb. 21, 2025)

_____

[4] Plaintiff did not specify under which state law it is bringing is unjust enrichment claim.  That alone warrants dismissal. *Coffee v. Google, LLC*, 2021 WL 493387, at *11 (N.D. Cal. Feb. 10, 2021) ("The Court agrees with Google that Plaintiffs cannot proceed on an unjust enrichment theory without specifying which state's law they seek to apply." (collecting cases)).  That said, Camuto assumes for purposes of this motion that Plaintiff, a California resident, brings her unjust enrichment claim under California law.

CAMUTO'S MEMO I/S/O MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

(quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) ("California does not recognize a separate cause of action for unjust enrichment."). Courts therefore "consistently dismiss[] stand-alone claims for unjust enrichment." *Id.* at 132–33 (collecting cases).

*Second*, even if Plaintiff's unjust enrichment claim was construed as a quasi-contract claim, it still fails. This is because such a claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Kerkorian v. Samsung Elecs. Am., Inc.*, 2019 WL 6918293, at *7 (E.D. Cal. Dec. 19, 2019) (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)). There can be no dispute that such an agreement exists here.  Indeed, Plaintiff's Amended Complaint now expressly states that she has an "agreement[] with Defendant." Am. Compl., ¶ 87.  Moreover, "Plaintiff's damages in this action result from h[er] direct purchase of the [p]roduct 'which, under the California Commercial Code, creates an express contract between the buyer and seller.'" *Smith v. Allmax Nutrition, Inc.*, 2015 WL 9434768, at *10 (E.D. Cal. Dec. 24, 2015) (citing *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004)); *Shin v. Sanyo Foods Corp. of Am.*, 2024 WL 4467603, at *4 (C.D. Cal. Aug. 13, 2024) ("[T]he existence of an express agreement has been inferred from a direct sale between a buyer and seller pursuant to the California Commercial Code.").

*Third*, where, as here, claims for unjust enrichment "are based on the same conduct on related statutory claims, these claims rise and fall together." *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *9 (N.D. Cal. Mar. 28, 2024), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025). Thus, should the Court dismiss the statutory claims, the unjust enrichment claim should be dismissed as well.[5]  *Balzer v. Wal-Mart*

---

[5] The unjust enrichment claim should be dismissed even if the Court permits the statutory claims to proceed.  If the Court allows the statutory claims to move forward, the Court would necessarily conclude that Plaintiff has an adequate remedy at law (*e.g.*, restitution under the UCL), and thus "a separate claim for restitution

CAMUTO'S MEMO I/S/O MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

*Stores, Inc.*, 2015 WL 13828418, at *4 (C.D. Cal. Feb. 25, 2015) ("Courts generally dismiss quasi-contract claims that are merely duplicative of UCL, FAL, and CLRA claims, which already provide for restitution as a remedy" and collecting cases).

## III.    This Case Should Be Dismissed With Prejudice

Plaintiff filed her amended complaint with the benefits of the arguments that Camuto makes here, which are nearly identical to the points Camuto raised in its first motion to dismiss. *Compare* ECF No. 12 (Camuto's first motion to dismiss). Plaintiff did not correct any the problems from her first complaint because she cannot change the facts. She uses the same webpage screenshots in both complaints. She concedes in both that the Route Insurance Fee is optional, and that it was clearly disclosed twice on the webpage. And she has never plead any facts suggesting that she and Camuto specifically agreed to a destination contract.

At bottom, this transaction was an ordinary and routine online shopping experience and no new facts can change that reality. Two tries are enough; no further leave should be granted. *See Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Pappy's Barber Shops, Inc. v. Farmer's Grp., Inc.*, 491 F. Supp. 3d 738, 739–740 (S.D. Cal. 2020) (noting "the facts surrounding Plaintiffs' insurance claim are largely undisputed" and denying leave to file a second complaint because "[n]o amount of artful pleading by Plaintiffs can state a plausible claim . . . .").

## CONCLUSION

For the foregoing reasons, Camuto respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

---

[based on unjust enrichment] is unnecessary." *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal.App.5th 192, 208 (2023) (citation omitted).

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

Dated: July 25, 2025

JONES DAY

By: */s/ Ryan D. Ball*
    Ryan D. Ball

Attorneys for Defendant
CAMUTO IPCO, LLC

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant CAMUTO IPCO, LLC certifies that this brief contains 6,036 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 25, 2025                                    JONES DAY


                                                        By:  */s/ Ryan D. Ball*
                                                             Ryan D. Ball

                                                        Attorneys for Defendant
                                                        CAMUTO IPCO, LLC

CAMUTO'S MEMO I/S/O MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:25-cv-03446-AB (Ex)